IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOANN WALKER, | ) | CASE NO. 1:12-CV-2716 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT & RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff JoAnn Walker's application for Social Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

I. PROCEDURAL HISTORY

On March 31, 2009, Plaintiff JoAnn Walker ("Plaintiff" or "Walker") protectively applied for Supplemental Security Income benefits.[1]  (Tr. 95-100, 51).  Plaintiff alleged she became disabled on March 13, 2009, due to suffering from lupus, rheumatoid arthritis, depression, asthma, acid reflux and sinus problems. (Tr. 119).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 64-66, 70-76).  On April 22, 2010, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ") to contest the denial of

---

[1] Plaintiff previously applied for benefits in 2004, but was denied.  (*See* Tr. 56 – 62).

her application.  (Tr. 77).  The administration granted the request and scheduled a hearing.  (Tr. 84).

On February 17, 2011, an ALJ convened a hearing to consider Walker's case.  (Tr. 30-50).  Plaintiff, represented by counsel, appeared at the proceeding and testified.  (*Id.*).  However, the ALJ indicated that he could not secure a vocational expert to appear in person at the hearing.  (Tr. 48).  Therefore, the ALJ advised Walker that he would submit written questions to a vocational expert and share the answers to such with her and counsel prior to issuing his ruling.  (*Id.*).

Thereafter, on April 18, 2011, the ALJ issued his decision applying the five-step sequential analysis to determine whether Plaintiff was disabled.  (Tr. 15-24).  Based on his review, the ALJ concluded Walker was not entitled to benefits.  (*Id.*).  Following the issuance of this ruling, Plaintiff sought review of the decision from the Appeals Council.  (Tr. 91).  However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-4).  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 1383(c).

## II.  PERSONAL BACKGROUND INFORMATION

Plaintiff was born on February 4, 1964, and was 47 years old on the date of her hearing before the ALJ.[2]  (Tr. 34-35).  Accordingly, at all relevant times, Plaintiff has been considered as a "younger person" for Social Security purposes.  *See* 20 C.F.R. § 416.963(c).  Plaintiff completed the ninth grade and then left school to work.  (Tr. 35).  She has not earned her GED.

---

[2] The transcript incorrectly states that Plaintiff was 38 years old at the time of the hearing.  (Tr. 35).

(*Id*.).  Walker also has relevant work experience.  In the past, her employment has required her to inspect and stack parts and perform cleaning duties.  (Tr. 35-36).

### III. MEDICAL EVIDENCE[3]

Plaintiff has a number of physical ailments.  Records from the Cleveland Clinic Foundation show that Walker was diagnosed with lupus in approximately 1995.  (Tr. 235).  In 2004, Plaintiff had multiple lipomas appear on her right knee, which subsequently required surgical removal.  (Tr. 235, 241).  In 2005, Plaintiff's doctors diagnosed her with lateral epicondylitis in her left arm.[4]  (Tr. 192).  Eventually, Plaintiff had surgery to cure this ailment.  (Tr. 200).  Following surgery, doctors advised Walker to wear a wrist brace for two weeks.  (Tr. 201).

During the relevant period under review, Walker received treatment at Metro Broadway Health Center.  She presented there in March 2009, with complaints of running out of medication for her mental disorder and lupus.  (Tr. 246).  Plaintiff presented to her treating physician, Dr. Judith Manzon, for an initial visit on June 4, 2009.  (Tr. 287).  Walker informed Dr. Manzon that she experienced joint swelling in her hands and feet, tingling and numbness in her fingers, sleep deprivation, sensitivity to lights and dizziness.  (*Id*.).

Dr. Manzon continued to treat Plaintiff at the time of the ALJ's hearing.  Throughout her treatment, Walker often complained to Dr. Manzon about pain and tenderness.  In June 2009, she

---

[3] The following summary of Plaintiff's medical record is not intended to reflect all of the evidence of record, nor all of the information the undersigned took into consideration when making its ruling.

[4] This condition is commonly referred to as "tennis elbow", and described as a "painful condition that occurs when tendons in your elbow are overworked, usually by repetitive motions of the wrist and arm." *Mayo Clinic*, http://www.mayoclinic.com/health/tennis-elbow/DS00469 (last visited July 15, 2013).

presented to Dr. Manzon with complaints of tenderness throughout her body, particularly in her neck, legs, feet and arms.  (Tr. 290).  Upon examination, Walker tested negative bilaterally on straight leg raising tests, had a full range of motion in her arms, legs, and neck, and had a normal gait.  (*Id.*).  Dr. Manzon suspected that Plaintiff's pain was related to her fibromyalgia rather than lupus.  (Tr. 291).  The doctor advised Plaintiff to continue her current medication regimen and to consult with a physical therapist.  (*Id.*).

On September 1, 2009, Plaintiff presented to Dr. Yolanda Duncan for a consultative examination.  (Tr. 273-79).  Dr. Duncan found Walker suffered from the following conditions: systemic lupus erythematosus, arthritis, depression and asthma.  (Tr. 279).  During her physical examination of Plaintiff, she observed no visual deformities, a normal gait without the use of ambulatory aids and joints which appeared clinically normal.  (Tr. 278).  Nevertheless, Dr. Duncan noted that Plaintiff expressed "tenderness over most of her joints" and while she could perform fine motor manipulation movements, Plaintiff experienced "notable pain" doing so.  (*Id.*).  In summarizing her findings, Dr. Duncan opined that Plaintiff would "have difficulty with walking more than 40 feet, climbing a flight of stairs, standing more than three minutes, and sitting for longer than five to 10 minutes."  (Tr. 279).

Plaintiff presented back to Dr. Manzon on September 3, 2009.  (Tr. 307).  At that time, Walker reported that her medication significantly helped manage her pain level – making it "tolerable although not completely resolved."  (*Id.*).  However, she indicated that her pain returned one to two days after she discontinued her medication.  (*Id.*).  Plaintiff also informed Dr. Manzon that she continued to experience swelling and joint pain in her fingers, knees, elbows and back.  (Tr. 308).  Dr. Manzon observed that Plaintiff was tender in all of the joints in her hands, right wrist, elbows, shoulders, knees and right ankle.  (Tr. 309).  Yet, Plaintiff retained a

4

full range of motion in these joints.  (*Id*.).  Dr. Manzon directed Plaintiff to continue taking her prescriptions at the current dosage and to follow up with her primary care physician regarding her elevated blood pressure.  (Tr. 311).

On October 16, 2009, state agency reviewer, Dr. Anton Freihofner, evaluated Plaintiff's physical impairments after reviewing Walker's medical record, including Dr. Duncan's findings. (Tr. 371-78).  Dr. Freihofner opined Walker retained the ability to: 1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; 2) stand, walk and sit for approximately 6 hours each workday; and 3) push and/or pull without restriction.  (Tr. 372).  In addition, Dr. Freihofner concluded that Plaintiff did not require any postural limitations, other than being limited to only occasional stooping due to her pain.  (Tr. 373).  Otherwise, the reviewer found Walker's impairments did not cause any manipulative, visual, communicative or environmental limitations. (Tr. 373-75).  However, Dr. Freihofner specifically commented that full weight was not given to Dr. Duncan's findings because they were not consistent with Plaintiff's level of functionality.  (Tr. 376-77).  Dr. Freihofner noted that despite Dr. Duncan's findings of extreme limitations, Plaintiff's examination, range of motion, gait and joints all appeared normal.  (*Id*.).

Plaintiff continued treatment with Dr. Manzon throughout 2009.  On October 15, 2009, Walker told the doctor that she had pain, rated as 8 out of 10, in her hands, lower back and knees. She also noticed a rash on her arm and chest and swelling in her ankles and hands.  (Tr. 328). Dr. Manzon adjusted Walker's medication and advised her to return in a month.  (Tr. 331).  At her visit in December 2009, Plaintiff indicated that her new medication only reduced her pain by ten percent.  (Tr. 341).  Therefore, Dr. Manzon indicated that she would wean Plaintiff off of that medication and prescribe new medication.  (Tr. 343).

5

Plaintiff saw Dr. Manzon again in March 2010.  She continued to complain of pain and swelling in various joints in her body.  (Tr. 402).  However, Dr. Manzon again noted that her review of Plaintiff's joints was largely unremarkable, and that Plaintiff retained a full range of motion.  (Tr. 403).  Therefore, the doctor recommended Plaintiff to seek physical therapy.  (Tr. 405).  Dr. Manzon stressed that Plaintiff had no active inflammation, but that if such arose, she would increase Plaintiff's dosage. (*Id*.).

In April 2010, state agency physician, W. Jerry McCloud, reviewed Plaintiff's medical record and assessed her physical residual functional capacity.  (Tr. 380-87).  Dr. McCloud opined Plaintiff could perform jobs limited to: 1) lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; 2) occasional climbing and no balancing; and 3) working indoors. (Tr. 381-83).  Dr. McCloud stated that his findings were an adoption of the prior ALJ's residual functional capacity determination.  (Tr. 381).

Lastly, Plaintiff went back to see Dr. Manzon in January 2011.  (Tr. 435-36).  She complained of skin discoloration in her toes, pain in her knees and right elbow, making it difficult to even pick up a cup, and lumps on her abdomen.  (*Id*.).  Yet, there was no swelling of her joints.  (Tr. 436).  Dr. Manzon noted that Walker was tolerating her medication and had no new complaints or symptoms.  The doctor advised Plaintiff to consult her dermatologist regarding the lumps on her abdomen and to continue taking her medication at the current dosage. (Tr. 439).

## IV.  ALJ's DECISION

The ALJ made the following relevant findings of fact and conclusions of law:

1.      The claimant has not engaged in substantial gainful activity since March 31, 2009, the application date.

2. The claimant has the following severe impairments:  systemic lupus erythematosus, osteoarthritis, fibromyalgia, and lateral epicondylitis.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never use ladders, ropes, and scaffolds.  The claimant can only occasionally stoop, and climb ramps and stairs.  She is limited to indoor work.

5. The claimant is capable of performing her past relevant work as a stacker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since March 31, 2009, the date the application was filed.

(Tr. 15-24) (internal citations omitted).

## V.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*,

7

745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)*.*

## VII.  ANALYSIS

Plaintiff's appeal is based upon challenges to the ALJ's assessment of her residual functional capacity ("RFC"). Plaintiff contends the ALJ's RFC finding is flawed on two grounds. First, Walker contends the ALJ erroneously concluded she was capable of performing "light work" despite medical opinion evidence demonstrating the opposite. Second, Walker asserts that the RFC is inadequate because the ALJ failed to include any manipulative restrictions therein. The undersigned finds that neither of these objections warrants remand or reversal.

8

### 1. Light Work

The governing regulations define "light work" as work "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . . a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R § 416.967(b). In this case, the ALJ determined Walker was capable of performing a range of light work so long as it did not involve more than occasional stooping and climbing of ramps and stairs. The ALJ also precluded Plaintiff from working around certain occupational hazards such as ladders, ropes and scaffolds.

Walker claims that opinions provided by two medical sources prove that she is incapable of performing light work as found by the ALJ. To begin, Plaintiff points to treatment records from her treating physician, Dr. Judith Manzon. Plaintiff notes that Dr. Manzon treated her throughout 2009 and 2010 for various problems associated with her arms and legs. Moreover, Plaintiff submits that these ailments and the pain associated with them prevent her from being able to perform light work.

Although the ALJ never referenced Dr. Manzon by name, his written opinion contains a lengthy account of Dr. Manzon's treatment notes and findings. (*See* Tr. 20-21). The ALJ chronologically tracked Plaintiff's history of treatment with the doctor and concluded that Plaintiff's exams with Dr. Manzon were "ostensibly unremarkable", as demonstrated by the doctor's ability to treat Plaintiff with medication and referrals to physical therapy, of which there was no record of Plaintiff's compliance. The ALJ also held that the record revealed only periodic complaints of pain by Walker.

After reviewing the record, the undersigned finds that Dr. Manzon's treatment notes do not undermine the ALJ's RFC assessment. Plaintiff relies heavily on treatment notes

documenting her complaints of swelling, tenderness and pain in her hands, wrists, back, knees, ankles and feet.  The ALJ acknowledged these records, but ruled that despite such complaints, exams showed that Walker retained a full range of motion throughout all her joints.  (Tr. 21, 328-30, 342).  The ALJ also acknowledged Dr. Manzon's records referencing Walker's complaints of tenderness in the upper extremities and hands, but stressed that Dr. Manzon indicated that there was no swelling, associated warmth or erythema (redness of the skin) present.  (Tr. 21, 403).  Dr. Manzon's notes state that Plaintiff had a "full but painful [range of motion] of all joints."  (Tr. 403).

The ALJ's review of Dr. Manzon's records also revealed that Plaintiff had few complaints regarding her lupus or joints during the second half of 2010.  In fact, Plaintiff did not complain of joint pain between June 2010 and January 2011.  At that time, Walker claimed she could not pick up a cup with her right arm, and suffered from soreness in her toes and painful lumps on her extremities and abdomen.  Yet, treatment notes again reveal that Walker had a normal gait, and there was no evidence of swelling, warmth or erythema of her joints.  Accordingly, the ALJ concluded that overall, Plaintiff's complaints of pain were periodic and that her exams appeared mostly unremarkable from an objective standpoint.

Plaintiff has not shown how Dr. Manzon's findings undermine her ability to perform light work.  The undersigned notes that Plaintiff has not identified where Dr. Manzon ever restricted her ability to lift, stand or sit.  It appears that Plaintiff may believe that her diagnoses of fibromyalgia, lupus, arthralgias, lumbago, subcutaneous nodules and toe discoloration, automatically render her incapable of light work.  However, this circuit has consistently recognized that being *diagnosed* with an ailment is not the same as being *disabled* from the

10

ailment. *Cf. Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (finding that a diagnosable disorder was not disabling). Thus, it was necessary for Plaintiff to show more than the diagnoses made by Dr. Manzon. The relevant inquiry was whether Walker's impairments caused any functional limitations on her ability to work. The record supports the ALJ's conclusion in the negative, as Walker has not identified where Dr. Manzon indicated that her ailments restricted her physical functionality to perform the various exertional tasks constituting light work.

Finally, Plaintiff takes issue with the ALJ's characterization of her complaints of pain as "few" or "periodic". This argument, however, is futile. These terms are inherently ambiguous and relative. Here, the ALJ expressed that this finding was based upon his *longitudinal view* of Plaintiff's record, and there is support for his ruling. Notably, Plaintiff's brief only cites to doctor's visits in March, June, September and October of 2009, March and June of 2010, and January of 2011. (Pl.'s Br. at 9-10). In addition, the ALJ identified a span of approximately six months wherein Plaintiff did not report any complaints of pain to her doctor.

Plaintiff's reliance upon Dr. Yolanda Duncan's opinion is also unavailing because the ALJ reasonably discredited her findings. Dr. Duncan concluded that Plaintiff was limited to walking no more than 40 feet at a time, standing for three minutes and sitting for five to ten minutes. However, the ALJ assigned little weight to this opinion ruling that it was "incongruent with the relatively normal signs and findings of [Plaintiff's] exam" and based simply on Plaintiff's allegations rather than on the doctor's independent opinion. (Tr. 22).

The ALJ's assessment of Dr. Duncan's opinion is supported by substantial evidence. State agency examiner, Dr. Anton Freihofner, reviewed Plaintiff's file, including Dr. Duncan's findings, in October 2009. Dr. Freihofner indicated that Dr. Duncan's opinion was inconsistent

with Plaintiff's physical examination which showed that Walker exhibited a normal gait, normal ranges of motion and a normal appearance of her joints.  To the contrary, Dr. Freihofner opined Walker was capable of performing light work, with the exception of jobs requiring the use of ladders, ropes, scaffolds or more than occasional climbing of ramps and stairs.

The ALJ gave significant weight to Dr. Freihofner's assessment, finding that it was consistent with the evidence of record.  Although opinions of examining physicians are generally afforded more deference than opinions from non-examining physicians, 20 C.F.R. § 416.927(c)(1), an opinion from a doctor who has only seen the claimant on one occasion is not entitled to any special deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Therefore, because Dr. Duncan only saw Plaintiff once, her findings were not automatically entitled to deference.  On the other hand, state agency medical consultants are "highly qualified" and are considered "experts in Social Security disability evaluation." 20 C.F.R § 416.927(e)(2)(i).  As such, their opinions "'may be entitled to greater weight than the opinions of treating or examining sources' when more consistent with the record as a whole." *Lancaster v. Astrue*, No. 1:10-cv-2841, 2011 WL 5361075, at *5 (N.D.Ohio Oct. 31, 2011) (*quoting* SSR 96-6p, 1196 WL 374180, at *3).

 Here, Dr. Freihofner's findings were more consistent with the evidence of record than were Dr. Duncan's findings, as recognized by the ALJ.  Although Plaintiff experienced pain in some parts of her body, she retained a normal gait without the need for an ambulatory aid and full range of motion throughout her body.  In addition, her pain and related symptoms were generally manageable through pain medication and steroid injections.  These findings support the ALJ's decision to credit the opinions of the state reviewer rather than Dr. Duncan, whose largely

normal findings are inconsistent with her recommended limitations.  Although Plaintiff was admonished to attend physical therapy, the ALJ found that there was no evidence in the record showing where Plaintiff acted upon this recommendation.

To this point, the undersigned also notes that Plaintiff did not challenge this finding by the ALJ.  Plaintiff's apparent failure to follow through with physical therapy reinforces the ALJ's decision to discredit her alleged level of pain.  *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("[W]hen a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.  A failure to do so may cast doubt on a claimant's assertions of disabling pain.").  Therefore, the undersigned concludes that the ALJ properly examined and discounted the findings of Dr. Duncan.

### 2.  Manipulative Restrictions

Walker's second assignment of error surrounds the ALJ's decision to omit manipulative limitations from his RFC assessment.  Prior to Plaintiff's alleged disability onset date, she had surgery to cure the lateral epicondylitis in her left arm.  Following surgery, her doctor advised her to wear a wrist brace for two weeks.

With respect to her current application for benefits, Walker claims that the ALJ should have restricted her ability to manipulate objects based upon her prior surgery and Dr. Manzon's numerous references to pain, tenderness and mild swelling in her hands, wrists, arms and shoulders.  During the hearing, Plaintiff asserted that she could not perform various tasks, such as driving, writing, or holding a cup of coffee, due to these impediments.  She accuses the ALJ of ignoring this evidence.

Contrary to Plaintiff's contention, the ALJ sufficiently addressed and omitted Plaintiff's alleged manipulative impairments from his RFC determination.  To begin, the ALJ labeled Plaintiff's lateral epicondylitis as one of her severe impairments at step two of the sequential analysis.  The ALJ also thoroughly discussed Dr. Manzon's treatment records in which the doctor addressed Walker's claims of numbness, swelling, tingling and pain in her hands.  However, the ALJ repeatedly noted that despite Plaintiff's claims, Dr. Manzon found Plaintiff to have a full range of motion in all her joints.   Additionally, unlike her doctors in 2005, Dr. Manzon did not prescribe Plaintiff a wrist brace or otherwise limit her ability to use her hands.  Nor has Plaintiff pointed to any other *relevant* medical opinion evidence demonstrating that her diagnosis caused functional limitations.  Without such, Dr. Manzon's mere diagnosis of pain or other symptoms does little to show how such pain impacted Plaintiff's ultimate ability to work.  *See Foster, supra*, 853 F.2d at 489.

Although Plaintiff testified that her ailments and their accompanying pain made it difficult for her to perform manipulative functions, the ALJ discredited her statements.  The ALJ held that Plaintiff's actions during the hearing contradicted her statements indicating she was more limited.  The ALJ also noted that Plaintiff's sporadic employment history prior to her alleged disability onset date caused the ALJ to question whether her current unemployment was volitional or truly a result of her medical conditions.  The ALJ's credibility finding is entitled to great deference.  *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009). Because the ALJ discredited Plaintiff's statements regarding her manipulative limitations, he failed to include them within his RFC determination.  Consequently, it was reasonable for the ALJ to refrain from including any such limitations within the hypothetical question he submitted to the vocational expert.  *Brewer v. Soc. Sec. Admin.*, 39 F. App'x 252, 254 (6th Cir. 2002) ("The

14

ALJ is not obligated to include unsubstantiated complaints and restrictions in his hypothetical questions.") (*citing Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)*)*.

## VIII. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 17, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).